UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In the Matter of the Extradition of | ) | Misc. No. SA: 17-MJ-0786-ESC |
| Hasan, Ager Mohsin | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF EXTRADITION LAW**

## I.     Background

On May 22, 2017, United States Magistrate Judge G. Michael Harvey of the United States

District Court for the District of Columbia issued an arrest warrant for fugitive Ager Mohsin Hasan

("Hasan") pursuant to a request for a provisional arrest warrant from the Government of Canada

under the authority of the Treaty on Extradition Between the United States of America and Canada,

U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, the Protocol Amending the Extradition Treaty with

Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), and the Second Protocol

Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO.

107-11 (2002) (collectively referred hereinafter as "the Treaty"), and 18 U.S.C. §§ 3184 *et seq.*[1]

On July 11, 2017, U.S. law enforcement arrested Hasan on this arrest warrant.  Hasan made an

initial court appearance on July 12, 2017, at which time this Court ordered him detained.[2]  The

fugitive is currently in the custody of the United States Marshals.

Accompanying this memorandum, the United States lodges Canada's formal request to the

United States Department of State for Hasan's extradition, which is supported by the documents

---

[1]  The Treaty is attached to the Declaration of Katherine C. Fennell, which is part of the government's
Request for Extradition.

[2]  This Court also signed a new complaint and arrest warrant on that date.

required by the Treaty.[3]  The United States seeks Hasan's extradition in accordance with its treaty obligations to Canada.  By statute, the judicial officer handling the extradition is required to hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  If the judicial officer finds the fugitive extraditable, he or she certifies that conclusion to the Secretary of State, who decides whether to surrender the fugitive.  Because the law regarding extradition is *sui generis*, differing substantially from ordinary criminal or civil proceedings, the United States offers this memorandum as a guide to the nature of the extradition hearing and the application of the Treaty to the facts of this case.

## II.      Statement of Facts

According to the evidence submitted by Canada, Hasan committed the crimes of second degree murder; break and enter; failure to comply with recognizance (three counts); and failure to attend court.  These crimes relate to two incidents of violence, which occurred on April 4, 2017, and April 28, 2017, perpetrated by Hasan and involving his ex-girlfriend, Melinda Vasilije ("Vasilije").[4]  On the evening of April 4, 2017, shortly following the end of his dating relationship with Vasilije, Hasan smashed through the window of her residence.  Then, Hasan entered the residence and assaulted two other people inside.

---

[3]  The request for extradition is based upon all of the documents submitted by Canadian authorities, which were filed on September 28, 2017.

[4]  Canadian authorities also seek Hasan's extradition based on two counts of assault involving the April 4, 2017, incident; however, the United States is not requesting that this Court certify his extraditability for those two counts of assault, as the conduct underlying those counts does not appear to form the basis for an extraditable offense under the Treaty.

Subsequently, Canadian authorities charged Hasan with the offenses of break and enter and assault, but a Canadian court permitted him bail on conditions of recognizance. These conditions included no-contact and stay-away orders, as well as a prohibition on possessing weapons. Hasan was also required to attend court proceedings scheduled for May 18, 2017. However, on April 28, 2017, Hasan visited Vasilje in her residence and murdered her by stabbing her with a steak knife. A subsequent autopsy showed that she had been stabbed in excess of thirty times and revealed that the cause of her death was stab wounds to her chest and neck. Closed-circuit video captured Hasan running to his car and driving away from Vasilije's residence shortly after the time of her murder. Within hours, he crossed the Canada-United States border, where he remained at large until his arrest.

The extradition request contains a prosecutor's affidavit summarizing the procedural history of the case in Canada and the law supporting the charges and extradition request. *See* Affidavit of Amanda Rubaszek ("Rubaszek Affidavit"). The extradition request also contains an affidavit of facts prepared by a Canadian police officer, which details the facts underlying Hasan's offenses. *See* Affidavit of Adam Ogram ("Ogram Affidavit").

### 1. Legal Background from the Prosecutor's Affidavit

According to the Rubaszek Affidavit, Canadian authorities initiated proceedings against Hasan on April 4, 2017, on charges of break and enter (section 348(1) of the Criminal Code of Canada) and assault. Canadian authorities laid on a second set of charges on May 1, 2017, for second degree murder (section 235(1) of the Criminal Code of Canada); three counts of failure to comply with recognizance (section 145(3) of the Criminal Code of Canada); and failure to attend

court (section 145(2) of the Criminal Code of Canada).  A Canadian Justice of the Peace issued a warrant for Hasan's arrest on May 1, 2017.[5]

The Rubaszek Affidavit also establishes the maximum punishments associated with Hasan's offenses:  break and enter (imprisonment for life); failure to comply with a recognizance (two-year's imprisonment); second degree murder (imprisonment for life); and fail to attend court (two-year's imprisonment).  Furthermore, the Affidavit states that there is no statute of limitations that would affect the prosecution of these offenses pursuant to Canadian law.

## 2.  Factual Background from the Officer's Affidavit

According to the Ogram Affidavit, Vasilije reported that she had been dating Hasan for approximately 14 months prior to April 3, 2017.  The relationship was turbulent, and Hasan was jealous and controlling.  On April 3, 2017, Vasilije ended the relationship via a text message that she sent to Hasan.  This prompted numerous phone calls and text messages from Hasan to Vasilije throughout April 3, 2017, in which Hasan became increasingly agitated.[6]  Vasilije's mother was aware of Hasan's messages and asked her sister to go to Vasilije's house, which she did on the late evening of April 3, 2017.  Several other people were also at Vasilije's house that evening.

Witnesses reported that at approximately 11:20 p.m., Hasan arrived at Vasilije's residence, began banging on the patio door, and was screaming her name and demanding to be let inside. When Vasilije and the others refused to let him in, Hasan kicked through the glass panel on the bottom of the patio door and crawled inside the residence.  Vasilije managed to hide in another

---

[5]  Canadian authorities issued additional warrants for Hasan's arrest on May 18, 1017, and May 23, 2017, following his failure to appear in court.

[6]  This was established, at least in part, by Hasan's cell phone records, which were obtained by police pursuant to a Canadian production order and compared to messages recovered from Vasilije's phone by police following her murder.

apartment, but Hasan assaulted two other people inside her residence (pushing one woman's head into a door frame, and then kicking a man and punching him in the face). Police arrived thereafter and arrested Hasan.

Hasan was charged with break and enter and two counts of assault. He was held in custody for a bail hearing but released on April 4, 2017, with the terms of his bail being: (1) that he stay away from the Vasilije's residence;[7] (2) that he not have any contact with Vasilije; and (3) that he not possess any weapons.[8]

However, on April 9, 2017, Hasan began sending text messages to Vasilije. These messages continued for several weeks and expressed Hasan's apologies and claims that he loved her. Eventually, Vasilije agreed to meet Hasan at her residence on the evening of April 27, 2017. Vasilije sent Hasan a text message coordinating to meet with him once her friends had left her building. At 11:59 p.m. on April 27, 2017, Vasilije sent Hasan a message stating, "I think the coast is clear." At 12:01 a.m. on April 28, 2017, Hasan replied by text message stating, "Buzz me in." Vasilije's friends returned to her residence and observed a pair of men's shoes in the doorway and flowers in the kitchen. Vasilije's friends believed that Hasan was in Vasilije's room because earlier she had told them that he was coming over that night.

Vaslije's friends stayed in the residence for a period of time, but then decided to leave to get food. While they were getting food, Vasilije sent a text message to one of her friends stating, "He's going now." This message was sent at 1:39 a.m. At 1:42 a.m., closed-circuit video taken

---

[7]  More specifically, the bail condition was that he stay away from "the Region of Waterloo," where Vasilije's residence was located, "except for required court appearances and to attend pre-arranged meetings with [] legal counsel." *See* Exhibit B to the Rubaszek Affidavit.

[8]  "Weapons," as defined in Hasan's bail condition, included "anything designed to be used or intended for use to cause death or injury." *Id*.

from the apartment building across the street showed Hasan and Vasilije walking toward his car, hugging, and appearing to part ways.  However, at 1:45 a.m., as Vasilije began walking back to her residence, video showed Hasan slowly followed her.  At 2:01 a.m. he was again captured on video running to his car and driving away from the area.

At approximately 2:40 p.m., Vasilije's friends returned to the apartment and found her lying on the floor in a large pool of blood.  They called emergency responders, who arrived shortly thereafter and observed Vasilije on the floor with no pulse and showing multiple stab wounds to her arms, throat, and chest.  Police located and collected several steak knives, one of which was on the floor next to Vasilije's head and another of which was on the kitchen counter covered in blood and bent at a 45 degree angle.

At 3:05 a.m., Vasilije was pronounced dead.  At 5:44 a.m., surveillance images showed Hasan driving across the Peace Bridge from Fort Erie to Buffalo, New York.

## III.    Legal Framework and Argument

### 1.   Applicable Law Concerning Extradition Hearings

The extradition process is *sui generis*, neither a criminal nor a civil proceeding. Accordingly, we have outlined the United States' extradition scheme below, and have detailed the court's circumscribed role in the extradition process.

### A.    The role of the extradition judge in extradition proceedings

Extradition is primarily an executive function with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge."  18 U.S.C. § 3184; *see also Escobedo*

*v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980).  The Secretary of State, and not the court, makes the decision regarding whether the fugitive should ultimately be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Escobedo*, 623 F.2d at 1105.  "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch."  *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the court's role will be to consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification— as defined in the treaty, statutes, and case law—have been established.  *Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)); *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 815 (S.D. Tex. 2011).  If the court finds that the requirements for certification have been met, the court must furnish the certification to the Secretary of State, together with a copy of any testimony taken before the court, and must commit the fugitive to the custody of the United States Marshal to await the Secretary's final determination regarding surrender.  18 U.S.C. § 3184; *see In re Extradition of Garcia*, 825 F. Supp. 2d at 815-16.

**B.      The requirements for certification**

At the extradition hearing, the court's review will be limited to determining whether:

(1) the judicial officer is authorized to conduct the extradition proceeding;

(2) the court has jurisdiction over the fugitive;

(3) the applicable treaty is in full force and effect;

(4) the crimes for which surrender is requested are covered by the applicable

treaty; and

(5) there is sufficient evidence to support a finding of probable cause as to each charge for

which extradition is sought. *See In re Extradition of Garcia*, 825 F. Supp. 2d at 826-27.  The

following sections briefly discuss each finding the court must make in order to issue the

certification to the Secretary of State.

### i.   *Authority of the court over the proceedings*

The extradition statute authorizes proceedings to be conducted by "any justice or judge of

the United States, or any magistrate judge authorized so to do by a court of the United States, or

any judge of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  As such,

the judicial officer conducting the extradition hearing prescribed by Section 3184 does not exercise

"any part of the judicial power of the United States," *In re Extradition of Kirby*, 106 F.3d 855, 866

(9th Cir. 1996), but is rather acting in a "non-institutional capacity by virtue of a special authority."

*In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993).  Both magistrate judges and

district judges may render a certification under Section 3184.  *See Austin v. Healey*, 5 F.3d 598,

601-02 (2d Cir. 1993); (W.D. Tex. Local Cr. Rule CV-72, Appendix C, Rule 1(a)(3) ("Each United

States Magistrate Judge of this Court is authorized to perform the duties prescribed by 28 U.S.C.

§ 636(a), and may . . . Conduct extradition proceedings, in accordance with 18 U.S.C. § 3184.).

### ii.   *Jurisdiction over the fugitive*

The court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18

U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found

within his jurisdiction . . . issue his warrant for the apprehension of the person so charged.").

### iii.   Treaty in full force and effect

The extradition statute, 18 U.S.C. § 3184, provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States.  *See In re Extradition of Garcia*, 825 F. Supp. 2d at 827.  The government will satisfy this requirement at the extradition hearing by offering into evidence a declaration from Katherine C. Fennell, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and Canada.  The court should defer to the Department of State's determination in that regard.  *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969), *cert. denied*, 398 U.S. 903 (1970).

### iv.   Crimes covered by the treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the Treaty.  The Treaty in this case provides for the return of fugitives charged with, or convicted of, an extraditable offense, as defined under the Treaty.  The Treaty defines offenses as extraditable if the criminal conduct is punished under the laws of both the United States and Canada by a deprivation of liberty for a maximum of more than one year, or by a more severe penalty.

Consequently, in assessing whether the crimes for which extradition is requested are covered by the Treaty, the court will examine the description of criminal conduct provided by Canada in support of its charge[s] and decide whether that conduct would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states.  *See Quintanilla v. United States*, 582 F. App'x 412, 414 (5th Cir. 2014).  A requesting country need not establish that its crimes are identical to ours.  *Id.* at 414.  Indeed, "[t]he law does

not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922).

In fulfilling its function under Section 3184, the judicial officer should liberally construe the applicable extradition treaty in order to effectuate its purpose, namely the surrender of fugitives to the requesting country. *Factor v. Laubenheimer*, 290 U.S. 276, 301 (1933). Accordingly, because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers[,]" *Grin v. Shine*, 187 U.S. 181, 184 (1902), the court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981); *see also Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) ("The point of an extradition treaty after all is to facilitate extradition . . . .").

> *v. Probable cause that the fugitive has committed the offense[s]*

To certify the evidence to the Secretary of State, the court must next conclude there is probable cause to believe that the crimes charged by Canada were committed by the person before the court. *Escobedo*, 623 F.2d at 1102 & 1105. Probable cause is established if "there is evidence sufficient to show reasonable ground to believe the accused guilty." *Sayne*, 418 F.2d at 684; *see also Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) ("The standard for arrest is probable cause, defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.") (internal quotation marks and citation omitted).

The extradition judge's probable cause determination is "not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues," but instead "serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based."   *Quinn*, 783 F.2d at 791 (internal quotation marks and citation omitted).

### C.      The extradition hearing follows unique procedures

#### i.      *An extradition hearing is not a criminal proceeding*

An extradition hearing is not a criminal proceeding. Rather, its purpose is to decide the sufficiency of the charge under the treaty, not to determine the guilt or innocence of the accused; that is for the foreign court. *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901). The limited nature of the hearing has resulted in special procedural and evidentiary rules.

Neither the Federal Rules of Criminal Procedure, nor Federal Rules of Evidence apply to extradition proceedings.[9]   *See Balzan v. United States*, 702 F.3d 220, 224 (5th Cir. 2012). Moreover, the fugitive has no right to discovery.  *See Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005); *Montemayor Seguy v. United States*, 329 F. Supp. 2d 883, 889 (S.D. Tex. 2004). The fugitive's right to present evidence is severely constrained, and his constitutional rights are limited.  For example, the fugitive has no right to cross-examine witnesses who might testify at the hearing, *In re Ntakirutimana*, 1998 WL 655708, at *25 (S.D. Tex. Aug. 6, 1998); there is no Sixth Amendment right to a speedy trial, *McDonald v. Burrows*, 731 F.2d 294, 297 (5th Cir. 1984); the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition

---

[9] Fed. R. Crim. P. 1(a)(5)(A) states: "Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive." Fed. R. Evid. 1101(d)(3) provides: "These rules – except for those on privilege – do not apply to . . . miscellaneous proceedings such as extradition or rendition."

proceedings, *In re Ntakirutimana*, 1998 WL 655708, at \*4; the exclusionary rule is not applicable, *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); *United States v. Adler*, 605 F. Supp. 2d 829, 835 (W.D. Tex. 2009); and the fugitive does not have the right to confront his accusers, *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

> ii.  *Extradition hearings rely on written submissions and do not require live witnesses*

A certification of extradition may be, and typically is, based entirely on the authenticated documentary evidence and information provided by the requesting government.  *See, e.g.*, *In re Extradition of Garcia*, 825 F. Supp. 2d at 830 ("[E]xtradition can be predicated entirely on the 'unsworn statements of absent witnesses.'") (quoting *Collins*, 259 U.S. at 317).  Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing. *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986).  Requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty."  *Bingham*, 241 U.S. at 517.  Further, hearsay evidence is admissible at an extradition hearing and may fully support the court's findings leading to a certification under Section 3184.  *Collins*, 259 U.S. at 317; *Escobedo*, 623 F.2d at 1102 n.10.

> iii.  *The fugitive's evidence is very limited and excludes technical and affirmative defenses*

Due to the nature and limited purpose of an extradition hearing under Section 3184 and the importance of the international obligations of the United States under an extradition treaty, a fugitive's opportunity to challenge the evidence introduced against him is very circumscribed.  A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but may only introduce evidence explaining the submitted evidence.  *See*

*Charlton*, 229 U.S. at 457-58; *In re Extradition of Garcia*, 825 F. Supp. 2d at 829.  A contrary rule might compel the "demanding government to produce all its evidence … both directing and rebutting, in order to meet the defense thus gathered from every quarter."  *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)).  The admission of such explanatory evidence is largely within the discretion of the court.  *In re Extradition of Garcia*, 825 F. Supp. 2d at 830.

Courts routinely reject technical and affirmative defenses in extradition proceedings.  *See Bingham*, 241 U.S. at 517 (rejecting objections that "savor of technicality").  These issues, which require factual or credibility determinations, are for the courts in the requesting country to resolve at trial.

iv.     *Rule of non-inquiry: the executive considers all matters other than sufficiency*

Other than the sufficiency of the evidence, all matters raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by the court.  *See* 18 U.S.C. §§ 3184, 3186.  The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the requesting country.  *See Escobedo*, 623 F.2d at 1105.  This is consistent with the long-held understanding that surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State" within the executive's "powers to conduct foreign affairs."  *See In re Kaine*, 55 U.S. 103, 110 (1852).  Similarly, a fugitive's contention that the extradition request is politically motivated or that the requesting state's justice system is unfair, should be addressed by the Secretary of State, not the court.  *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) (motives of requesting state is a matter for consideration by the executive branch); *Escobedo*, 623 F.2d 1098.

## 2.   The Elements of Extradition Are Met

### A.   There is subject-matter jurisdiction

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  Consequently, both magistrate judges and district judges may render a "certification" under Section 3184.  *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority); *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); *Jimenez v. Aristeguieta*, 311 F.2d 547, 553-55 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing).  Here, W.D. Tex. Local Cr. Rule CV-72, Appendix C, Rule 1(a)(3) specifically delegates to magistrate judges the authority to handle extradition matters.

### B.   There is personal jurisdiction

This Court has jurisdiction over the fugitive because the fugitive was "found" in this District when he was arrested in this District on the extradition warrant issued on May 22, 2017.  *See In re Extradition of Mainero (Mainero I)*, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997).  When the fugitive is "found within [this] jurisdiction," the personal jurisdictional requirement of 18 U.S.C. § 3184 is met.

### C.   Hasan is the person sought in Canada

Hasan is the person named in the Canadian arrest warrants for these offenses.  At the time of his arrest in the United States on July 11, 2017, he was in possession of a Canadian passport in

his name, which contained a photograph that matched the photograph associated with his arrest by Canadian authorities on April 4, 2017.  He was also in possession of several other Ontario identity cards in his name.  Furthermore, he was driving a Honda car registered to his mother, which was the same car he drove to Vasilije's residence on the evening of April 27, 2017, and later used to cross the Canada-U.S. border on the morning of April 28, 2017, following his murder of Vasilije.

### D.      Extradition Treaty is in force

There is an extradition treaty in full force and effect between the United States and Canada. *See* Declaration of Katherine C. Fennell.  The State Department's conclusion that the Treaty is in full force and effect, as expressed in this Declaration, is entitled to deference.  *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight"); *accord Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184 (1982); *Charlton*, 229 U.S. at 468; *see also Mainero I*, 990 F. Supp. at 1216 (giving deference to State Department's opinion that extradition treaty was in full force and effect).

### E.      Hasan is sought for offenses covered by the Treaty

The extradition treaty with Canada is what is known as a "dual criminality" treaty.  All early United States extradition treaties were "list" treaties, in which the treaty listed all the extraditable crimes.  Most modern treaties, including the current Treaty with Canada, are "dual criminality" treaties, which state that for an act to be extraditable, it need only be punishable under the laws of both countries by imprisonment for a period of more than a year.  *See* Treaty, Article I of the 1988 Protocol ("Extradition shall be granted for conduct which constitutes an offense

punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.").

Here, the charged offenses are covered by the Treaty and are therefore extraditable. The laws in both the United States and Canada make Hasan's offenses punishable by at least a year of imprisonment. In determining whether an offense is punishable under the laws of both countries, extradition magistrates properly look to the underlying acts to determine whether, if they had been committed in the United States, they would violate United States federal law, the law of the state in which the hearing is held, or the law of the preponderance of the states. *See Cucuzzella*, 638 F.2d at 107; *In re Extradition of Manzi*, 888 F.2d 204, 207 (1st Cir. 1989); *see also Collins*, 259 U.S. at 312 ("The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions."). Both United States federal law and Texas state law would be violated by the fugitive's conduct had that conduct taken place here in the United States.

First, Hasan could be charged with various forms of homicide for the killing of Vasilije on April 28, 2017, pursuant Texas law, which would categorize his conduct as a felony of the first degree and subject him to well in excess of one year of imprisonment. *See* Tex. Penal Code §§ 12.32, 19.02.[10]

Second, Hasan could be charged with burglary for the breaking-and-entering of Vasilije's residence and assault of two persons therein on April 4, 2017, pursuant to Texas law, which would

---

[10] *Cf.* Rubaszek Affidavit (Criminal Code of Canada section 235(1): "Every one who commits first degree or second degree murder . . . shall be sentenced to imprisonment for life.")

categorize his conduct as a felony of the first degree and subject him to well in excess of one-year of imprisonment.  *See* Tex. Penal Code §§ 12.32, 30.02.[11]

Third, Hasan could be charged under 18 U.S.C. § 3148 for violating his three bail conditions imposed following his April 4, 2017, offenses.  Punishment for those violations would be governed under U.S. law by the federal contempt statute, 18 U.S.C. § 401(3).  That statute contains no statutory limit on punishment.[12]  *See Cohen v. Benov*, 374 F. Supp. 2d 850, 859 (C.D. Cal. 2005) ("[P]etitioner claims there is no federal counterpart to the Canadian offense of breach of recognizance under Section 145(3) of the Criminal Code of Canada, and the offense is not punishable by more than one year imprisonment; thus, petitioner claims he cannot be extradited to face charges on that offense.  Petitioner is mistaken.  An examination of the United States Code shows that a criminal defendant who violates or breaches a condition of pretrial release, such as petitioner did, may be charged with violating 18 U.S.C. § 3148[.]")

Fourth, Hasan could be charged under 18 U.S.C. § 3146 for his failure to appear in court on his April 4, 2017, offenses.  That statute establishes a two-year penalty if one of the underlying offenses was a felony.  In this case, the underlying felony would be burglary.[13]

---

[11]  *Cf.* Rubaszek Affidavit (Criminal Code of Canada section 348(1):  "Every one who []breaks and enters a place with intent to commit an indictable offense therein . . . is guilty . . . if the offence is committed in relation to a dwelling-house . . . of an indictable offense and liable to imprisonment for life[.]"; section 348(2) (establishing a rebuttable presumption that evidence of breaking and entering establishes an intent to commit an indictable offense therein)).

[12]  *Cf.* Rubaszek Affidavit (Criminal Code of Canada section 145(3):  "Every one who, being at large on his undertaking or recognizance . . . fails, without lawful excuse . . . to comply with that condition, is guilty of . . . an indictable offence and is liable to imprisonment for a term not exceeding two years[.]"

[13]  *Cf.* Rubaszek Affidavit (Criminal Code of Canada section 145(2):  "Every one who, . . . having appeared before a court, justice, or judge, fails, without lawful excuse . . . to attend court as thereafter required . . . is guilty of an indictable offence and liable to imprisonment for a term not exceeding two years[.]"

As a result, the Hasan's conduct amounts to a series of offenses punishable by imprisonment for a period of one year or more in the United States and in Canada, bringing those offenses for which he is sought within the scope of the Treaty.[14]

**F.      There is probable cause**

The standard of proof to find the evidence "sufficient to sustain the charge ..." pursuant to Section 3184 is the familiar domestic requirement of probable cause. The Court must conclude that there is probable cause to believe that the crime charged by Canada was committed and the person before the Court committed it. *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006). The evidence is sufficient, and probable cause is established, if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The Supreme Court stated in *Benson*, 127 U.S. at 463:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*See also Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez*,

---

[14]  Because dual criminality appears to be lacking under U.S. law for the two separate counts of assault for which Canada seeks extradition, the United States is not asking this Court to certify Hasan for those offenses.  *Cf*. Rubaszek Affidavit (assault offenses carry a maximum punishment of five years imprisonment under section 266 of the Criminal Code of Canada).

268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict."); *accord Afanasjev*, 418 F.3d at 1165 n.11; *Barapind*, 400 F.3d at 752; *Sidali v. INS*, 107 F.3d 191, 199 (3d Cir. 1997).

The facts summarized above and set forth in the extradition request submitted by Canada establish probable cause.  According to the Ogram Affidavit, witness statements, cell phone records, and video footage firmly establish the strength of the Canadian government's case.

Hasan's criminal offense of burglary on April 4, 2017, was witnessed by several persons, and his motive and intent for that offense was established by his and Vasilije's cell phone records.  The evidence going to his violation of the no-contact and stay-away orders includes the cell phone records and the video captures of his presence at Vasilije's residence on April 28, 2017.  The evidence going to his further violation of his no-weapons order is tied-in with the evidence of his murder of Vasilije on April 28, 2017, by the use of a weapon:  one or more knives.

That evidence of murder includes, but is not limited to:  (1) the text messages Hasan exchanged with Vasilije planning and confirming his visit to her residence that evening; (2) the statements of Vasilije's friends that she told them Hasan intended to visit her the same evening – later corroborated by the presence of a pair of men's shoes and flowers in the residence; (3) video captures of Hasan (a) leaving his residence in his mother's car, (b) walking away from Vasilije's residence with her at 1:42 a.m., (c) following Vasilije back towards her residence minutes later at 1:45 a.m., (d) running from her residence to his mother's car and driving away at 2:01 a.m., and (e) crossing the Peace Bridge into the United

States in the same car several hours thereafter.  There is more than sufficient evidence to support a probable cause finding that during the time that Hasan cornered Vasilije alone in her residence, he murdered her by stabbing her repeatedly with one or more steak knives, which was the clear cause of her death.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests the certification of Hasan's extraditability to Canada on the charges of second-degree murder; failure to comply with recognizance (three counts); break and enter; and fail to attend court.

Respectfully submitted,

Richard L. Durbin, Jr.
United States Attorney

By:        /s/_____
           Priscilla Garcia
           Assistant United States Attorney
           Texas Bar No. 07641200
           601 N. W. Loop 410, Suite 600
           San Antonio, Texas  78216
           210-384-7018

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 17, 2017, a true and correct copy of the foregoing Government's Memorandum of Extradition Law was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:  Angela Saad Lindsey.

<div style="margin-left: 50%;">

  /s/_____

Priscilla Garcia
Assistant United States Attorney
Texas Bar No. 07641200
601 N. W. Loop 410, Suite 600
San Antonio, Texas  78216
210-384-7018

</div>