UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In the Matter of the Extradition of<br>Ager Mohsin Hasan | )<br>)<br>)<br>)<br>)<br>) | Case No. SA-17-MJ-0786-ESC |

## **OPPOSITION TO THE FUGITIVE'S MOTION FOR BAIL**

### I.     Background

On May 22, 2017, United States Magistrate Judge G. Michael Harvey of the United States District Court for the District of Columbia issued an arrest warrant for fugitive Ager Mohsin Hasan ("Hasan") pursuant to a request for a provisional arrest warrant from the Government of Canada under the authority of the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), and the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively referred hereinafter as "the Treaty"), and 18 U.S.C. §§ 3184 *et seq*. On July 11, 2017, U.S. law enforcement arrested Hasan on this arrest warrant. Hasan made an initial court appearance on July 12, 2017, at which time this Court ordered him detained. Hasan's extradition hearing is scheduled for October 24, 2017, and he is currently in the custody of the United States Marshals.

On October 20, 2017, Hasan moved for bail and argued that special circumstances warrant his release. [DOC. NO. 14] The United States opposes his motion and respectfully requests that

1

he be held without bond pending, and following, the anticipated certification of extradibility pursuant to 18 U.S.C. §§ 3181 *et seq.*, until he is surrendered to Canadian authorities. In short, Hasan has not overcome the strong presumption against bail in international extradition cases, and cannot meet his burden of showing that (1) special circumstances exist, (2) he is not a risk of flight, and (3) he is not a danger to the community.

## II.     Discussion

Just as extradition hearings follow unique procedures, the determination of whether to release a fugitive on bail is also *sui generis*. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 *et seq.*, do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not apply because an extradition proceeding is not a criminal case.[1] *See Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984); *Matter of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016); *United States v. Wroclawski*, 574 F. Supp. 2d 1040, 1044 (D. Ariz. 2008). Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

---

[1] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, Hasan is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with offenses committed in violation of the law of the requesting state, Canada.

**A.     Applicable law**

    1.    <u>A strong presumption against bail governs in an international extradition proceeding</u>

Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see also In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986); *United States v. Snyder*, No. 13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting that presumption against bail in extradition is "well-established"). The Supreme Court established this presumption against bail in *Wright v. Henkel*, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. 40, 62 (1903).

The prudential reasons for this presumption against bail in international extradition cases are clear and compelling. When, as here, a requesting country meets the conditions of the Treaty, the United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive. *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); *see also Wright*, 190 U.S. at 62. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond.

3

        2.    <u>Fugitives must be detained unless they establish "special circumstances" and also demonstrate that they are neither a flight risk nor a danger to the community</u>

In light of the strong presumption against bail established in *Wright*, fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, *and* (2) "special circumstances" warrant their release. *See, e.g.*, *In re Extradition of Russell*, 805 F.2d at 1216; *United States v. Ramnath*, 533 F. Supp. 2d 662, 665-66 (E.D. Tex. 2008).[2] "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In the Matter of the Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense. *See, e.g.*, *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that a "well-educated and sophisticated" fugitive facing serious charges in foreign country had both the "incentive and ability to flee" and therefore presented a flight risk); *In re Extradition of Patel*, 08-430–MJ–HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering the fact that a fugitive, a physician, had "more than sufficient assets available with which to flee").

---

[2] "[T]here is disagreement among the federal district courts regarding the burden of persuasion that a potential extraditee must satisfy . . . . [Some] courts require the person subject to international extradition to overcome the presumption against bail by presenting clear and convincing evidence that bail is warranted. . . . [and t]here is a negligible minority of courts that have adopted a preponderance of the evidence standard. *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 481 (S.D. Tex. 2010); *see also Ramnath* 533 F. Supp. 2d at 665-66 (burden on extradition respondents to show by clear and convincing evidence that they are not a risk or flight or a danger to the community, and that special circumstances exist).

Crucially, the special circumstances inquiry is separate from considerations of danger to the community or risk of flight. *See, e.g.*, *Ramnath*, 533 F. Supp. 2d at 666 ("Generally, there are two prerequisites for setting bail.  The court must find that the respondent is neither a flight risk nor danger to any person or the community.  The court also must conclude that 'special circumstances' warranting pre-hearing release exist.") (internal citations omitted); *but see In re Extradition of Garcia*, 761 F. Supp. 2d 468, 473 (S.D. Tex. 2010) ("[W]hether the test to grant bail in foreign extradition cases is a two-pronged analysis, or whether risk of flight is considered as part of the 'special circumstances' inquiry, remains uncertain in the Fifth Circuit.").  "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance. *Leitner*, 784 F.2d at 161; *see also Salerno*, 878 F.2d at 317-18 (lack of flight risk "is not a criteria for release in an extradition case").  Accordingly, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances. *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *Mainero*, 950 F. Supp. at 294 (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)).  Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- The complexity of the pending litigation, *see, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996);

- The fugitive's need to consult with an attorney and/or participate in pending litigation, *see, e.g.*, *Smyth*, 976 F.2d at 1535-36;

- The fugitive's character, background, and/or ties to the community, *see, e.g.*, *Beresford-Redman*, 753 F. Supp. 2d at 1089; *Matter of Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994);

5

- The fact that the fugitive may have been living openly, *see, e.g.*, *Leitner*, 784 F.2d at 160-61; *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, *see, e.g.*, *In re Extradition of Huerta*, 2008 WL 2557514, *2 (S.D. Tex. June 23, 2008); *In re the Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see, e.g.*, *Matter of Antonowicz*, 244 F. Supp. 3d 1066, 1070 (C.D. Cal. 2017) at *3; *Knotek*, 2016 WL 4726537, at *7; *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, *see, e.g.*, *Pelletier*, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, *see, e.g.*, *In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see, e.g.*, *Salerno*, 878 F.2d at 318; *Matter of Antonowicz*, 244 F. Supp. 3d. at 1070; and

- The availability of bail for the same offense in the requesting country, *see, e.g.*, *Id.*; *Kyung Joon Kim*, 2004 WL 5782517, at *2; *Siegmund*, 887 F. Supp. at 1386-87.

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

3. <u>Even the "special circumstances" test will not be available to Hasan once this Court certifies his extradition</u>

In contrast to its express provision for post-certification detention, § 3184 is silent on the issue of whether a fugitive must be detained prior to certification. The decision in *Wright v. Henkel*, 190 U.S. 40 (1903), along with the subsequent evolution of the "special circumstances" test, addresses this lacuna, establishing the conditions under which a fugitive may be released on bail during the pre-certification stage of an extradition proceeding. *Wright* was a pre-certification case in which a fugitive applied for *habeas* relief following the denial of his bail application but prior to a finding of extraditability. 190 U.S. at 57 (explaining that "the writ was applied for in this instance before the commissioner had entered upon the examination [of whether the fugitive was extraditable]"); *see also, e.g.*, *In re Extradition of Russell*, 647 F. Supp. at 1046 (explaining that *Wright* was a pre-certification case), *aff'd*, 805 F.2d 1215 (5th Cir. 1986). In *Wright*, the Supreme Court held that special circumstances could permit the granting of bail notwithstanding the absence of a statute specifically authorizing bail. 190 U.S. at 63.

Notably, the Court did not purport to extend its holding to the post-certification stage of extradition and, in fact, recognized that doing so would be "inconsistent" with the federal extradition statute. *See id.* at 62 ("[Section] 5270 of the Revised Statutes [the predecessor of the current extradition statute] . . . is inconsistent with its allowance [of bail] after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge 'shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made'"). *Id*. Thus, while *Wright* may allow for the granting of pre-certification

7

bail, it does not undermine the prohibition on post-certification bail, as governed by the "shall issue" and "there to remain" language of § 3184.[3]

**B.     Analysis**

        1.     <u>Hasan fails to show special circumstances</u>

Hasan argues that the special circumstances justifying his release are weaknesses in the evidence in Canada's extradition request and his defense counsel's representation that bail would be available to him in Canada. [DOC. NO. 14 at 3-4] Both of these special-circumstances claims fail.

        a.     *Evidence of probable cause is overwhelming*

*First*, Hasan's avers that the extradition request's description of closed circuit television ("CCTV") footage "which is offered as evidence that Mr. Hasan was with the deceased shortly before she was murdered, does not show who the individuals are." [DOC. NO. 14 at 3] This statement is a remarkable distortion of the evidence presented in Canada's extradition request, which clearly establishes probable cause of Hasan's identity as Melinda Vasilije's ("Vasilije") murderer.

According to the Affidavit of Adam Ogram ("Ogram Affidavit"), contained in the extradition request, CCTV footage from Hasan's residence, which is approximately one-hour's drive from Vasilije's residence, showed him entering a black Honda HRV at approximately 10:37

---

[3] To the extent that in some cases certain courts have entertained bail requests after a certification of extraditability, the government respectfully submits that those cases incorrectly ignored the distinction between the pre- and post-certification stages of extradition, as well the limited applicability of the special circumstances test to only pre-certification proceedings. *See, e.g.*, *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) (applying special circumstances test when considering fugitive's motion for bail during appeal of certification order); *see also Beaulieu v. Hartigan*, 554 F.2d 1, 1-2 (1st Cir. 1977) (same).

p.m. on April 27, 2017.  *See* Ogram Affidavit at 6, 9.  CCTV footage from cameras close to Vasilije's residence showed a black Honda HRV arriving in the area at 11:25 p.m.  *Id*. at 9.

At 11:32 p.m., Hasan sent Vasilije a text message stating, "Well I'm here."  *Id*.  Hasan's admission, by text message, that he was at Vasilije's residence is corroborated by Vasilije's statement to her friend that Hasan was coming to her residence that evening.  *Id*. at 6.  At 1:39 a.m., Vasilije sent a text message to her friend stating, "He's going now."  *Id*.

Between 1:42 a.m. and 2:01 a.m., CCTV footage from "the building across the street from the victim's residence" showed (1) Hasan and Vasilije walking "toward Hasan's car, a Honda HRV"; (2) Vasilije returning to her residence alone; (3) Hasan "slowly follow[ing her] back to her apartment"; and (4) Hasan running to the Honda HRV and leaving the area, following the murder.  *Id*. at 6-7.  The portion of the Ogram Affidavit, which Hasan represents as "acknowledg[ing] the weakness of this evidence" [DOC. NO. 14 at 4], explains that

> [a]lthough the distance from the camera and the lighting conditions would have made it difficult to identity Hasan and the victim, the appearance of the vehicle, the timeline of the events, the content and timing of the text messages recovered from the victim's phone, and the images of both Hasan and the vehicle he was traveling in on the night of the alleged murder as well as thereafter, led [Canadian authorities] to form the belief that the people he observed in the video were Hasan and the victim.

Ogram Affidavit at 6 (footnote omitted).

This conclusion is exactly correct.  The context of the CCTV footage included a clear link between Hasan and his mother's 2016 Honda HRV (license plate BPKT 509), which, on April 28, 2017, Hasan's brother told police was missing from her driveway.  *Id*. at 6-7.  U.S. authorities captured video images of Hasan in the same 2016 Honda HRV (license plate BPKT 509) crossing the Peace Bridge and later at a Walmart in Pennsylvania.  *Id*.  U.S. authorities then arrested Hasan

while he was in the same vehicle in Texas in July 2017. *Id*. at 10. Contrary to Hasan's assertion, the evidence overwhelmingly shows that the person captured by the CCTV video arriving at Vaslije's residence in the same Honda HRV, stalking her as she walked back to her residence, and then fleeing the scene of the murder (again in the Honda HRV) was, in fact, Hasan.[4]

*Second*, Hasan suggests that the "forensic analysis of the deceased's phone shows a message from Mr. Hasan, which was time stamped after the time of her death." [DOC. NO. 14 at 4.] This refers to the text message Hasan sent at 3:39 a.m. on April 28, 2017, to Vasilije's cell phone stating, "Nice seeing tonight glad we worked things out! You better have deleted that fucking Dorshe [sic] bag lol. Anyways see you soon." Ogram Affidavit at 7. Hasan appears to be arguing that this text message shows that he knew nothing of that fact that Vasilije had been brutally murdered by the time of the text message.

However, given the totality of the evidence, a far more persuasive interpretation of the this text message is that it was an after-the-fact attempt by Hasan to cover up the murder, and to leave some trail of electronic evidence somehow tending to suggest his innocence and perhaps blame Vasilije's murder on an unnamed "Dorshe [sic] bag." Hasan's half-hearted effort at establishing a favorable state of mind is completely belied by his immediate flight across international borders to the United States, where he was at large until his arrest on unrelated charges in July 2017.

---

[4] Vasilije's death is conclusively established by the extradition request's description of her post-mortem examinations conducted by Canadian authorities, who established that her cause of death was multiple stab wounds to her chest and neck and that the manner of her death was homicide. *Id*. at 8.

10

Therefore, as previously argued by the United States, *see* [DOC. NO. 13 at 18-20], Canadian authorities have well-established the elements for extradition, including probable cause.[5] No lack of probable cause, or weaknesses in the government's case, establishes a special circumstance for bail purposes.

      b.   *Hasan's claims regarding the availability of bail in Canada fall far short of special circumstances*

Next, Hasan makes the wholly barebones argument that "[d]efense counsel has conferred with a Canadian attorney who confirmed that a person charged with homicide has been granted bail." [DOC. NO. 14 at 3].

*First*, as stated above, several courts have held that the availability of bail in the requesting country is not a special circumstance. *See*, *e.g.*, *Matter of Antonowicz*, 244 F. Supp. 3d at 1070 ("The parties conflicting proof about how bail would be handled in Poland highlights how Antonowicz's theory presents an unworkable task and one that does not address the primary goal of the extradition proceeding, which is to deliver the fugitive to the extraditing country.") (citing *Kyung Joon Kim*, 2004 WL 5782517, at *3 ("this Court would need to conduct 'a searching review' of the laws of Korea to determine whether the charged offenses would be bailable in Korea as applied to Kim, an unworkable and impractical task")) (brackets omitted).

*Second*, even those courts that do recognize the availability of bail in the requesting country as a possible special circumstance have not granted fugitives bail based on such a totally

---

[5] Hasan makes no effort to attack probable cause for the other offenses for which extradition is sought, *i.e.*, failure to comply with recognizance (three counts), break-and-enter, and fail to attend court. [D.E. 13 at 20]. Nor does he claim that any of these offenses are not covered by the Treaty, *i.e.*, that they are punishable by more than one-year's imprisonment in Canada, and that they would be punishable by more than one-year's imprisonment by U.S. analogue offenses had they been committed in the United States.

11

insufficient showing.  In *Ramnath*, the single case cited by Hasan, the court found that a proffer by "a Queen's counsel in the United Kingdom, [who] would testify that there is now a presumption for bail in international extradition proceedings in the United Kingdom," was an inadequate showing of special circumstances.  533 F. Supp. 2d at 675-76.  The court found that "even if bail routinely is granted to resident manslaughter defendants, there is no basis for the court to assume that such bail would be available to a non-resident, non-citizen who avoided returning to the United Kingdom after learning of pending criminal charges, and who resolutely resisted formal extradition."  *Id*. at 675-76.

Here, of course, Hasan is a Canadian resident.  However, not only did Hasan avoid returning to Canada after learning of pending charges, he fled across international borders before he could be arrested for his crimes.  Moreover, Hasan was at that time already in breach of his conditions of parole on the assault and the break-and-enter offenses that formed the basis for his April 3, 2017, charges, and for which he failed to appear in court in May 2017.  Therefore, there is no evidence that bail would be available in Canada for Hasan – a defendant who, while on conditions of parole stabbed his ex-girlfriend, fled to a foreign country and remained at large until his arrest, and who now "resolutely resist[s] formal extradition."  *Id.*

    2. <u>Hasan is a flight risk</u>

Hasan further suggests he is not a flight risk and would comply with conditions of release.  [DOC. NO.  14 at 3-4].  However, at the time Hasan was captured, in July 2017, he had been in contact with investigators seeking his whereabouts since May 2017.  [DOC. NO.  1 at 5.]  During this time, he had repeatedly indicated he did not want to be arrested by U.S. law enforcement.  *Id*.  Moreover, he had traveled from Canada to Texas, via Tennessee, expressing an intent eventually

to flee to Mexico. *Id*. It was not until he was arrested by U.S. authorities on an unrelated matter that the instant, extradition-related charges could be brought against him. Ogram Affidavit at 10. Given these facts, in addition to his recent history of breaching his conditions of parole, his flight across international borders, and the substantial amount of imprisonment (a life sentence) he faces in Canada for his murder charges, Hasan is a clear flight risk. *See, e.g.*, *Hababou v. Albright,* 82 F. Supp. 2d 347, 352 (D.N.J. 2000) (flight risk based, in part, on the seriousness of the charges); *see also Perez-Cueva*, 2016 WL 884877, at *3 (seriousness of allegations against fugitive "militates against release on bail").

Hence, Hasan's further flight from the United States to yet another country or to an underground location in the United States is a reasonable assumption. Allowance of bail in any amount would not guarantee his presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.

        3.<u>Hasan is a danger to the community</u>

Finally, Hasan claims that he is not a danger to the community because he lacks a criminal record. Of course, this ignores the fact that he is wanted in Canada for multiple offenses relating to two, separate incidents of violence committed not only against Vasilije, but against others. Ogam Affidavit at 4. It further ignores his additional arrest in the United States on unrelated charges. Put together, his behavior represents a total disregard for the law and the welfare of the communities in which he has resided.

### III.  CONCLUSION

For foregoing reasons, the United States requests that Hasan be detained pending his extradition and surrender to Canada, both before and after the certification of his extraditability by this Court.

Respectfully submitted,

Respectfully submitted,

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

By:  */s/ Priscilla Garcia*
     Priscilla Garcia
     Assistant United States Attorney
     Texas State Bar No. 07641200
     United States Attorney's Office
     Western District of Texas
     601 NW Loop 410, Suite 600
     San Antonio, TX 78216

### CERTIFICATE OF SERVICE

I certify that on October 23, 2017, a true and correct copy of the foregoing Government's Opposition to the Fugitive's Motion for Bail was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant: Mrs. Angela Saad Lindsey.

*/s/ Priscilla Garcia*
Priscilla Garcia
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF:<br><br>AGER MOHSIN HASAN | CASE NO.  SA-17-MJ-0786 ESC |

**O R D E R**

This Court, having considered the Motion for Bail filed by Ager Mohsin Hasan and the Government's Response in Opposition to Bail and being fully advised,

IT IS HEREBY ORDERED that the Defendant's Motion for Bail be DENIED.

SO ORDERED this _____ day of _____, 2017.

_____
ELIZABETH S. CHESTNEY,
UNITED STATES MAGISTRATE JUDGE