

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF AGER MOHSIN HASAN | CAUSE NO. 5:17-MJ-00786(1)-ESC |

## MEMORANDUM AND ORDER

Before the Court in the above-styled cause of action is the United States' formal request to the United States Department of State for the extradition of Ager Mohsin Hasan and Ager Mohsin Hasan's Motion for Bail [#14]. The United States files its request for extradition on behalf of the Canadian government, who is seeking to extradite Hasan to Canada for various crimes he allegedly committed in Canada. On October 24, 2017, the Court held a hearing on the extradition request and the motion for bail, at which Hasan and his attorney were present. After considering the United States' request, the documentation, evidence, and memorandum submitted in support thereof, as well as the arguments of counsel at the hearing, the Court will grant the request for extradition, deny the motion for bail, and issue a certificate of extraditability to the Secretary of State as to Hasan.

### I. Extradition Process

The process of extraditing a fugitive from the United States to Canada is governed by the provisions of the federal extradition statute, 18 U.S.C. §§ 3181–3196, and the extradition treaty between the United States and Canada ("the Treaty"). The Treaty provides that the United States and Canada mutually agree to extradite fugitives who are charged with crimes in one country and subsequently found within the territory of the other. *See* Treaty Signed at Washington Dec. 3, 1971, T.I.A.S. No. 8237 (Mar. 22, 1976). The terms of an extradition treaty should be liberally

1

construed so as to affect the "intention of the parties to secure the open and reciprocal surrender of fugitives to be tried for extraditable offenses." *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 815 (S.D. Tex. 2011) (citing *In re Extradition of Rodriguez Ortiz*, 444 F. Supp. 2d 876, 883 (N.D. Ill. 2006) (citing *Factor v. Laubenheimer*, 290 U.S. 276, 293–94 (1933)).

The foreign extradition process begins with the discovery of a foreign fugitive within the territory of the United States. *Id.* at 815. Canada may then request the provisional arrest of the fugitive in cases of urgency pursuant to Article 11, and the United States must comply with a valid request. T.I.A.S. No. 8237, art. 11, at *4. A judicial officer is authorized to issue a warrant for the arrest of any fugitive whose extradition is requested, upon a sworn complaint charging the fugitive with committing an extraditable offense. 18 U.S.C. § 3184.

The next stage in the extradition process is the extradition hearing conducted by a federal court in order to hear the evidence and determine whether that evidence is "sufficient to sustain the charge under the provisions of the proper treaty or convention." *Id.* The request for extradition shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings. T.I.A.S. No. 8237, at art. 9, *3. Actual extradition shall be granted only if the Court makes the following six findings:

> (1) the judicial officer has jurisdiction to conduct an extradition proceeding;
>
> (2) the Court has jurisdiction over the fugitive;
>
> (3) the person before the Court is the fugitive sought;
>
> (4) there is an extradition treaty in full force and effect;

> (5) the crimes for which surrender is requested are covered by that treaty; and
>
> (6) there is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought.

*In re Extradition of Garcia*, 825 F. Supp. 2d at 826–27.

If the court determines that the evidence is sufficient to warrant extradition, the judge then certifies to the Secretary of State that the fugitive may be detained and surrendered to the requesting country and forwards all the evidence taken before him to the Secretary of State. 18 U.S.C. § 3184; *Ntakirutimana v. Reno*, 184 F.3d 419, 422 (5th Cir. 1999). "The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980).

## II. Analysis

The record reflects that the Government filed a Complaint for the Provisional Arrest of Hasan with a View Towards Extradition on July 12, 2017 [#1], indicating that Hasan had been charged in Canada with four crimes allegedly committed within the jurisdiction of Canada: second degree murder; break and enter; failure to comply with recognizance; and failure to attend court. These crimes relate to two incidents of violence, which occurred on April 4, 2017 and April 28, 2017, allegedly perpetrated by Hasan and involving his ex-girlfriend, Melinda Vasilije.

The allegations against Hasan are as follows: On the evening of April 4, 2017, shortly following the end of his dating relationship with Vasilije, Hasan smashed through the window of her residence, entered, and assaulted two other people inside. Canadian authorities subsequently charged Hasan with the offense of break and enter and assault, but a Canadian court permitted

3

bail on conditions of recognizance.[1] These conditions included no-contact and stay-away orders preventing him from visiting Vasilije's residence, having any contact with Vasilije, entering the Region of Waterloo where she lived, or possessing weapons. Hasan was also required to attend court proceedings scheduled for May 18, 2017. However, on April 28, 2017, it is alleged that Hasan violated his conditions of recognizance by visiting Vasilije in her residence and ultimately committing second degree murder by stabbing Vasilije in excess of thirty times with a steak knife. Hasan thereafter fled from Canada and entered the United States in a 2016 Honda HRV registered to his mother, Sozan Jamil.

According to the Complaint filed with this Court [#1], a warrant for Hasan's arrest was issued by a Justice of the Peace of the Ontario Court of Justice on May 1, 2017 in connection with the murder of Vasilije, as well as Hasan's failure to comply with the recognizance. On May 23, 2017, Hasan was further charged with failing to attend his May 18, 2017 court appearance. On May 22, 2017, United States Magistrate Judge G. Michael Harvey of the United States District Court for the District of Columbia issued an arrest warrant for Hasan pursuant to a request for a provisional arrest warrant from the Government of Canada. On July 11, 2017, U.S. law enforcement arrested Hasan on this arrest warrant in the Western District of Texas. Hasan made an initial court appearance on July 12, 2017, at which time this Court executed a new complaint and arrest warrant and ordered Hasan detained [#1, #2]. This matter was subsequently set for a Public Extradition Hearing [#7]. Prior to the hearing, the Government submitted its Certified Formal Extradition Package containing the Certified State Department documents

---

[1] Canadian authorities also seek Hasan's extradition based on two counts of assault involving the April 4, 2017 incident. However, the United States is not requesting that this Court certify Hasan's extraditability for those two counts of assault, as the conduct underlying those counts does not appear to form the basis for an extraditable offense under the Treaty.

supporting the extradition request and a memorandum of extradition law [#13] for this Court's review.

A. **The evidence is sufficient to warrant extradition.**

At the beginning of the extradition hearing, the parties agreed that the only contested factor among the six requirements for extradition is whether there is probable cause as to each charge for which extradition is sought. The Court, however, will still make its written findings that all six factors have been satisfied.

i. <u>This Court has jurisdiction to conduct an extradition proceeding.</u>

As to the first factor, the statute governing extradition proceedings authorizes a broad class of judicial officers to hear extradition cases. *See* 18 U.S.C. § 3184. Additionally, federal magistrate judges are expressly authorized to hear and decide extradition cases if "authorized to do so by a court of the United States." *In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 693 (W.D. Tex. 2003) (citing 18 U.S.C. § 3184). Rule 1(a)(3) of Appendix C of the Western District of Texas's Local Rules for the Assignment of Duties to Untied States Magistrate Judges provides that each "United States Magistrate Judge of this Court is authorized to . . . conduct extradition proceedings . . . ." Accordingly, this Court has jurisdiction to conduct this extradition proceeding.

ii. <u>This Court has jurisdiction over the fugitive.</u>

As to the second factor, the extradition statute provides that jurisdiction will apply to any person found within the jurisdiction of the court. 18 U.S.C. § 3184. The parties agree that Hasan was initially found, and is now in federal custody, within the jurisdiction of the Western District of Texas. Thus, the Court has the requisite personal jurisdiction to make a determination on whether Hasan is extraditable pursuant to 18 U.S.C. § 3184.

iii. <u>The person before the Court is the fugitive sought.</u>

As to the third factor, the affidavit of Adam Ogram, a Canadian investigating officer in Hasan's case, states that at the time of Hasan's arrest on July 11, 2017, he was in possession of a Canadian passport in his name with a photograph matching the photograph associated with his arrest by Canadian authorities on April 4, 2017. Hasan was also in possession of several other Ontario identity cards issued in his name. Additionally, the evidence demonstrates that Hasan was driving a Honda car registered to his mother, the same car he drove to the victim's residence and used to cross the Canadian-U.S. border after the alleged murder. Hasan does not contest that he is the fugitive sought. The Court finds that the person before the Court is the fugitive sought by Canada.

iv. <u>There is an extradition treaty in full force and effect.</u>

As to the fourth factor, the Government has submitted the declaration of Katherine C. Fennell of the State Department, which states that the relevant and applicable treaty provisions are in full force and effect between the United States and Canada. Ms. Fennell's conclusion that the Treaty is in full force and effect is entitled to deference. *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight."). Thus, the fourth factor is also satisfied.

v. <u>The crimes for which surrender is requested are covered by the Treaty.</u>

As to the fifth factor, extradition will be considered where there is a sworn complaint charging the fugitive with a crime provided for in the Treaty. 18 U.S.C. § 3184. In accordance with the principle of dual criminality, an offense is extraditable if it could be punished, under the laws of both countries, with over a year of imprisonment. *Balzan v. United States*, 702 F.3d 220,

221 (5th Cir. 2012). To determine whether the acts would be punishable in the United States, the Court looks to underlying acts and determines whether they violate federal law, the law of the state in which the hearing is held, or the law of the preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981).

The crimes Hasan is charged with are second degree murder; break and enter; failure to comply with recognizance; and failure to attend court. The Court finds that Hasan could be charged with all of these offenses under Texas law. First, Texas law would categorize the alleged killing of Vasilije as a first-degree felony and could subject Hasan to well in excess of one year of imprisonment. *See* Tex. Penal Code §§ 12.32, 19.02(c). Second, Hasan could be charged with burglary for the breaking and entering of Vasilije's residence and assault of two persons therein on April 4, 2017. This would also be a first-degree felony subject to over one year of imprisonment. *See* Tex. Penal Code §§ 12.32, 30.02(d). Third, Hasan could be charged under 18 U.S.C. § 3148 for violating the bail conditions imposed following his April 4, 2017 offenses. Punishment for these violations would be governed under the federal contempt statute. *See* 18 U.S.C. § 3148(c) (stating the violation of bail conditions is punishable under 18 U.S.C. § 401). The federal contempt law contains no statutory limit on punishment. *See* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . ."). Finally, Hasan could be charged under 18 U.S.C. § 3146 for his failure to appear in court for his April 4, 2017 offenses. Where one of the underlying offenses was a felony, as the burglary here, the statute establishes a penalty ranging from two years to ten years, depending on the penalty for the underlying felony. *See* 18 U.S.C. § 3146(b)(1)(A).

All four of these crimes are also punishable for a period exceeding one year in Canada. The affidavit of Amanda Rubaszek, the police officer in charge of Hasan's case in Canada, attests to the jurisdiction of Canada to prosecute the offenses for which Canada seeks Hasan's extradition. The offense of break and enter is punishable by imprisonment up to a life sentence. *See* Crim. Code of Canada § 348(1). The offenses of failure to comply with recognizance and failure to attend court are punishable for a term not exceeding two years. *Id.* at §§ 145(2), (3). And the offense of first or second degree murder carries a sentence of imprisonment for life. *Id.* at § 235(1). In summary, Hasan's conduct amounts to a series of offenses punishable by imprisonment for a period of one year or more in both the United States and Canada, bringing all four offenses within the scope of the Treaty.

> vi.  <u>There is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought.</u>

Under 18 U.S.C. § 3184, the Court is charged with determining whether the "evidence [is] sufficient to sustain the charge under the provisions of the proper treaty." In international extradition cases, courts apply the federal standard of probable cause, i.e., reasonable grounds to believe the accused committed the charged offense. *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971). "In making this determination, courts apply a totality of the circumstances analysis and make a practical, common sense decision whether, given all the circumstances, there is a fair probability that the defendant committed the crime." *In re Extradition of Garcia*, 825 F. Supp. 2d at 828 (citing *Rodriguez Ortiz*, 444 F. Supp. 2d 876, 884 (N.D. Ill. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (internal quotations omitted)).

The facts and evidence in the record, as summarized in the affidavits of both Rubaszek and Ogram, demonstrate the fair probability that Hasan committed the crimes for which he is

charged. Both affidavits indicate that Hasan's alleged burglary of Vasilije's residence was witnessed by several persons, and his motive and intent for that offense was established by his and Vasilije's cell phone records. Vasilije made a statement to the police on April 3, 2017 that she had been dating Hasan for approximately 14 months, and their relationship was rocky. Vasilije's friend and roommate, Anna Manda, told police that Hasan was jealous and controlling in his relationship with Vasilije and that Vasilije was attempting to end the relationship. Cell phone records indicate that Vasilije broke up with Hasan via text message at approximately 9 a.m. the morning of the burglary. Hasan sent numerous text messages to Vasilije throughout the day of April 3, 2017, evidencing his mounting agitation when Vasilije failed to respond. Hasan ultimately advised Vasilije he was coming over that evening to her apartment, and Vasilije told him not to come. According to police statements provided by those present in Vasilije's apartment that evening, Hasan arrived at approximately 11:20 p.m. that evening, banging on the patio door, demanding to be let inside. When no one responded to his orders, Hasan was witnessed kicking through the bottom panel of glass and crawling inside. Vasilije fled the apartment with her sister, and Hasan proceeded to assault Vasilije's roommate and her roommate's brother when he attempted to intervene. This evidence provides probable cause that Hasan committed the offense of break and enter on the night of April 3, 2017.

Cell phone records and video recordings of the area outside of Vasilije's apartment also provide probable cause that—prior to and on the night of Vasilije's murder—Hasan violated the no-contact and stay-away orders of the Canadian court that were part of his bail terms. These cell records establish that Hasan sent a text message to Vasilije on April 9, 2017 apologizing for his behavior and professing his love for her. Over the coming weeks, Hasan continued to send almost daily text messages to Vasilije. Finally, on April 26, 2017, Vasilije finally responded but

stated that she did not want to see Hasan. Nonetheless, additional text messages establish that Hasan and Vasilije decided on a consensual meeting at her apartment the following night. Hasan sent Vasilije a text message that he was leaving his house to drive to her apartment and provided an additional status update during the drive.

When Hasan arrived at Vasilije's apartment building, she instructed him to wait until her friends left so that he would not be seen. At 11:59 p.m. on April 27, 2017, Vasilije sent Hasan a text message saying "I think the coast is clear." At 12:01 a.m. on April 28, 2017, Hasan sent a test message to Vasilije, "Buzz me in." Both Hasan's and Vasilije's cell phone records correspond with one another in terms of the timing of these messages. Additionally, law enforcement received statements from Vasilije's roommate, Anna Manda, and her friend, Ilona Huynh, that they had been socializing at the apartment that night but left the residence for 30 to 40 minutes to drop Vasilije's sister at a night club just after midnight. When they returned, they saw a pair of men's shoes in the doorway and flowers in the kitchen. Although Manda did not see Hasan in the apartment, she believed that the shoes were his because Vasilije had told her Hasan was coming over that night. This was confirmed by Huynh, who told police that Vasilije had asked them not to tell her sister that Hasan was coming over. This evidence provides probable cause that Hasan violated the no-contact and stay-away conditions of his recognizance prior to and on the night of Vasilije's murder.

Additionally, this evidence places Hasan at Vasilije's apartment and with Vasilije on the night of her murder. According to Manda and Huynh, Vasilije was in her bedroom with Hasan with the door closed in the early hours of April 28, 2017. Manda asked the Vasilije through the door if she was okay, and she responded that she was. After watching television for a while, Manda and Huynh decided to get some food. They asked Vasilije if she wanted anything, and

she called out "no" from her bedroom. Text messages recovered from Vasilije's phone show that at 1:22 a.m. Manda had texted her to say, "We're going out to get food want anything." While Manda and Huynh were out getting food, Vasilije texted Manda, "He's going now" at 1:39 a.m.

Video footage obtained by law enforcement also provides corroborating evidence of this timeline. According to a report prepared by Detective G. MacDonald, video from CCTV cameras retrieved from an apartment building across the street from Vasilije's residence show Hasan and Vasilije walking from Vasilije's apartment toward Hasan's car, a Honda HRV, at 1:42 a.m. Although the distance from the camera and the lighting conditions would have made it difficult to identify Hasan and Vasilije, the appearance of the vehicle, the timelines of the events, and the content and timing of the text messages recovered from Vasilije's phone led law enforcement to reasonably believe that the people captured in the video were Hasan and Vasilije. Additional video footage obtained from Hasan's residence, which had its own security system, shows Hasan entering a black Honda HRV on April 27, 2017 at approximately 10:37 p.m. for the one hour drive to Vasilije's apartment. Information obtained from Jagar Hasan, Hasan's brother, indicated that on April 28, 2017 his mother's Honda HRV was missing from the driveway.

The CCTV footage from the building across from Vasilije's residence further shows that after a brief verbal exchange, Vasilije backed away from Hasan into the middle of the road. Hasan followed her, but they hugged and parted ways. At 1:45 a.m., Vasilije is observed walking back to her apartment alone. Rather than getting into his car, however, Hasan is observed slowly following Vasilije back to her apartment. At 2:01 a.m., Hasan is captured on the same CCTV camera running to his car and leaving the area.

At approximately 2:40 a.m. Manda and Huynh returned to the apartment and discovered Vasilije lying on the floor in a large pool of blood. They fled the apartment and called for emergency response. Responding officers found Vasilije with no pulse and cut and stab wounds on her throat and chest, with a steak knife on the floor next to her head. Another steak knife was found on the kitchen counter. Both were covered in blood, and one was bent at a 45 degree angle. Vasilije was pronounced dead at 3:05 a.m. A post mortem examination determined the cause of death to be multiple stab wounds to the chest and neck and found that Vasilije has been stabbed in excess of thirty times.

At 3:39 a.m., Hasan sent a text message to Vasilije's cell phone stating, "Nice seeing you tonight glad we worked things out! You better have deleted that fucking Dorche [sic] bag lol. Anyways see you soon." Far from raising doubt as to Hasan's actual involvement in the murder, this text message, when viewed against all of the other evidence, suggests Hasan was merely attempting to cover up his guilt. Moreover, it is also evidence that Hasan was the man who was in the apartment that night. At 5:44 a.m. Hasan crossed into the United States at the Peace Bridge from Fort Erie into Buffalo, New York. An image captured by U.S. Customs and Border Protection Agency shows Hasan operating a Honda HRV with license plates issued to his mother. Still images of Hasan and this vehicle were also captured at a Walmart in Haborcreek, Pennsylvania.

On May 1, 2017, a user named "Redasblue101" posted a message about the murder of Vasilije on the online social networking website "Reddit" entitled "Wanted for Kitchener murder my side." The post contained detailed information about the homicide and referenced events that, according to investigators, could only have been known by someone present during the murder. The post also included photographs of Hasan and Vasilije, screen shots of text messages

between the couple on the night of the murder, and references to the April 3, 2017 assault. The post purported to give Hasan's side of the story. Investigators believe the person behind the Reddit post was Hasan. The aforementioned evidence, when viewed in its totality, provides reasonable grounds to believe that Hasan murdered Vasilije on the night of April 28, 2017. *See Garcia-Guillern*, 450 F.2d at 1192 (reciting the federal standard of probable cause applicable to extradition proceedings).

**B.    Hasan has not satisfied his burden to demonstrate that bail is warranted.**

Hasan moves this Court for release on bail, arguing that special circumstances warrant his release. The Court denied the motion at Hasan's extradition hearing, and this written order memorializes the Court's oral findings made at the hearing.

The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181, *et seq.*, do not provide for bail, and the Bail Reform Act, 18 U.S.C. §§ 3141, *et seq.*, does not apply because an extradition hearing is not a criminal proceeding. Instead, there is a well-established presumption against bail in an extradition case, as recognized by the Supreme Court. *Wright v. Henkel*, 190 U.S. 40, 62 (1903); *In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986). Accordingly, fugitives must be detained unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release. *See, e.g., In re Extradition of Russell*, 805 F.2d at 1216; *United States v. Ramnath*, 533 F. Supp. 2d 662, 665–66 (E.D. Tex. 2008). Hasan has demonstrated neither.

Rather, the record demonstrates that Hasan is both a danger to the community and a serious flight risk. Hasan fled his home country to the United States while on bond for numerous offenses, including a breaking and entering that included a violent assault. Additionally, there is probable cause to believe Hasan committed first degree murder. Hasan's record does not

convince the Court that if the Court were to grant bail that Hasan would comply with the Court's conditions or make further appearance in Court. Hasan is facing three charges of noncompliance with his recognizance related to his bail in Canada and fled to the United States rather than appear in Canadian court in conjunction with these offenses. The Court is convinced that Hasan is likely to flee and further evade law enforcement if the Court were to release him on bail.

Finally, there are no special circumstances identified by Hasan that would compel his release. Hasan argues two special circumstances in support of his motion: (1) the availability of bail in Canada for murder and (2) the lack of probable cause to support the second-degree murder charge. The Court is unpersuaded that the fact that bail is theoretically available under some circumstances to those charged with murder in Canada somehow dictates that this Court should issue bail to Hasan, a fugitive charged with both murder and failure to comply with the terms of his Canadian bail who fled his country rather than comply with a court order. The Court also respectfully disagrees with Hasan that there is a lack of probable cause to support his murder charge. As detailed in this Court's discussion of the request for extradition, the evidence against Hasan is extensive and easily exceeds that required to establish probable cause. Accordingly, the Court will deny Hasan's motion for bail.

### III. Certificate of Extraditability and Notice

Having determined that the evidence submitted by the Government of Canada in support of the formal request for extradition is sufficient under the applicable legal standards,

**IT IS HEREBY ORDERED** that the extradition request should be **GRANTED**, and the undersigned hereby **CERTIFIES** to the Secretary of State of the United States of America that Ager Mohsin Hasan should be extradited.

**IT IS FURTHER ORDERED** that Ager Mohsin Hasan's Motion for Bail [#14] is **DENIED**. Respondent shall remain in the custody of the United States Marshal and confined in a proper facility until surrender is made to a duly qualified Canadian agent, or until further order from this Court or from the Secretary of State of the United States of America. The United States Attorney shall ensure that this matter is timely brought to the attention of the appropriate governmental authorities of both the United States of America and Canada.

**IT IS FINALLY ORDERED** that the District Clerk shall deliver a copy of this Memorandum and Certificate of Extradition, along with the evidence, to Rex Wayne Tillerson, 2201 C Street, NW, Washington, D.C., 20520.

**IT IS SO ORDERED.**

SIGNED this 8th day of November, 2017.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE